```
                    UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
LAUREN WOLFORD,                   :
                                  :CIVIL ACTION NO. 3:17-CV-983
         Plaintiff,               :
                                  :(JUDGE CONABOY)
         v.                       :
                                  :
NANCY A. BERRYHILL,               :
Acting Commissioner of            :
Social Security,                  :
                                  :
         Defendant.               :
                                  :
```

## **MEMORANDUM**

Pending before the Court is Plaintiff's appeal from the Acting Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (Doc. 1.) Plaintiff filed an application for benefits on August 2, 2013, alleging a disability onset date of November 4, 2013. (R. 60.) After she appealed the initial denial of the claim, Administrative Law Judge ("ALJ") Theodore Burock held a hearing on August 6, 2015. (*Id.*) With his Decision of November 9, 2015, the ALJ determined that Plaintiff had not been under a disability as defined in the Social Security Act from August 15, 2012, through March 31, 2014, the date last insured. (R. 70-71.) Plaintiff requested review of the Decision by the Appeals Council (R. 55-56), and the Appeals Council denied review on April 18, 2017 (R. 1-6). With the Appeals Council denial, the ALJ's November 9, 2015, decision became the decision of the Acting Commissioner. (R. 1.)

Plaintiff filed this action on June 6, 2017. (Doc. 1.) In

her supporting brief, Plaintiff asserts the ALJ erred on the following bases: 1) he erred in finding that Plaintiff had no severe impairments at step two; 2) he failed to properly weigh opinion evidence; 3) he erred at step three by finding Plaintiff did not meet Listings 12.04 and 12.06; and 4) he erred in his evaluation of Plaintiff's symptoms. (Doc. 12 at 1-2.) After careful review of the record and the parties' filings, the Court concludes this appeal is properly denied.[1]

## I. Background

Plaintiff was thirty years old on the alleged disability onset date. (R. 96.) She has a GED and past work including as a fast food worker and shipping clerk. (R. 176, 198.) When applying for benefits, Plaintiff claimed that the following conditions limited her ability to work: bipolar disorder, borderline adult ADD, PTSD, diabetes, tendonitis, and high blood pressure. (R. 196.)

### A. *Medical Evidence* [2]

On July 2, 2013, Plaintiff was seen by her primary care

---

[1] In Plaintiff's Reply Brief (Doc. 14) filed on December 14, 2017, Plaintiff essentially reiterates arguments made in her supporting brief. (*See*, *e.g.*, Doc. 12 at 9-11, Doc. 14 at 1-2.) Therefore, the Court primarily cites to Plaintiff's supporting brief in the Discussion section of the Memorandum.

[2] The evidence review focuses on that relevant to Plaintiff's claimed errors during the time period at issue--August 15, 2012, through March 31, 2014. It contains mainly records regarding Plaintiff's mental health because sufficiently articulated claims of error relate to alleged mental health impairments. (*See* Doc. 12 at 7-22.)

2

provider, James E. Bruckart, M.D., because of urinary symptoms and a vaginal discharge. (R. 270.) In the Assessment/Plan portion of the office notes, Dr. Bruckart recorded "[s]he reports good mental function at this time, will recommend evaluation by the psychiatrist to decide if treatment for bipolar or other thought disorder may be needed." (*Id.*)

Following a referral by Dr. Bruckhart for a psychiatry evaluation (R. 279), Plaintiff was seen by Kawish Garg, M.D., on August 13, 2013, at Keystone Behavioral Health. (R. 312.) Plaintiff reported that she had been previously diagnosed with depression and bipolar disorder but had not been on any medication for four or five years. (R. 312-13.) At the time of her visit, Plaintiff said she wanted to go back on medication because she had been experiencing depression. (R. 313.) Plaintiff also expressed concerns about anxiety which she indicated had been going on since childhood but panic symptoms were not as bad as they used to be. (*Id.*) Dr. Garg characterized Plaintiff's memories of sexual abuse by her mother's boyfriend and babysitter to be more like bad memories than PTSD, and he noted that she screened negative for hallucinations, paranoid thoughts, or phobias. (*Id.*) Dr. Garg determined that Plaintiff had problems with depression in the context of underlying bipolar disorder and she would benefit from mood stabilizing medications. (R. 314.) He also advised that Plaintiff cut down on her caffeine intake and return in two to

3

three weeks. (R. 314.) Mental Status examination showed the following: appropriate appearance; orientation to person, place, time and situation; unremarkable behavior; appropriate speech; appropriate affect; depressed mood; intact memory; clear consciousness sensorium; average intellect; cooperative attitude; good attention; good reasoning; good impulse control; good judgment and insight; realistic self-perception; logical thought processes; unremarkable thought content; and no suicidal or homicidal ideation. (R. 314.) Dr. Garg assessed bipolar disorder current episode depressed and generalized anxiety disorder with panic attacks. (*Id.*)

At her visit with Dr. Garg on September 16, 2013, Plaintiff reported that her depression was getting better but she was noticing more irritability and anger. (R. 309.) She also talked about some memory and focus problems, but she did not think they were related to medication because they preceded her recent prescription. (*Id.*) Plaintiff's mental status was unchanged from her August visit. (R. 309-10, 314.)

P. Moskel, M.D., conducted a Disability Evaluation on October 7, 2013. (R. 299-303.) By history, Plaintiff reported to Dr. Moskel that she had recently sought treatment for depression as well as being forgetful and worrisome, symptoms for which she had been treated many years before. (R. 299.) She said she did not like to leave the house and was only comfortable with people she

4

knew well. (R. 299-300.) Plaintiff indicated she was able to do all of her chores including cooking and shopping for food, and she had not had treatment for many years until a few months before the evaluation. (R. 300.) Plaintiff was not receiving any kind of psychotherapy or counseling at the time of her evaluation. (R. 301.) Dr. Moskel made the folllowing Mental Status examination findings: Plaintiff made good eye contact and had no increase or decrease in psychomotor activity; her speech was appropriate in rate, production, content, and spontaneity; her mood was euthymic but with some degree of anxiety; her affect was fully appropriate; her thought processes were logical and rational; her thought content was within normal limits; she had no obvious obsessive-compulsive features, phobias, or unusual somatic preoccupations; nothing suggested suicidal ideation; her attention and concentration were good and she was oriented in all spheres; her immediate, recent, and remote memories were all intact; her fund of knowledge was well within normal limits; her abstract reasoning was intact; her insight and judgment were quite good; her intelligence was estimated to be at least average; and her impulse controls were present. (R. 301-02.) Dr. Moskel diagnosed depressive disorder, NOS with anxiety features and rule out PTSD. (R. 302.) Dr. Moskel provided a Medical Source Statement which included the following assessment:

> Regarding the medical source statement
> for work-related activities; based on today's

> examination and her current mental status
> there is really no impairment in her ability
> to understand instructions whether simple or
> complex. She seems to be quite intelligence
> [sic] and has actually a very good abstract
> reasoning and very good insight. When it
> comes to getting along with public
> supervisors and coworkers, although she
> states she had no trouble in the past most of
> her jobs did not deal with people that much.
> Clinically, she seems to be friendly and
> cooperative in engaging, but by her history
> it sounds as although [sic] she indeed has a
> lot of anxiety out in public.

(R. 302.)

On October 14, 2013, Plaintiff reported to Dr. Garg that her depression was getting better, her mood was improving, and she had better focus. (R. 306.) Plaintiff added that she still got depressed but said it was "not near as bad as it was." (*Id.*) The only medication side effect reported was dry mouth. (*Id.*) Dr. Garg's Mental Status examination was the same as that recorded in August and September except that her mood was euthymic rather than depressed. (R. 306, 309-10, 314.)

The next office visit notes of record are dated April 27, 2015--over one year after the date last insured. (R. 337.) At this visit, Dr. Garg noted that Plaintiff's Mental Status examination was unremarkable and he found Plaintiff's mood to be euthymic. (R. 338.) Dr. Garg also noted that Plaintiff was taking medications without side effects. (R. 337.)

## *B. Opinion Evidence*

State agency reviewer Thomas Fink, Ph.D., reviewed records and

6

provided information concerning Medically Determinable Impairments and Severity (MDI) on November 1, 2013. (R. 99-100.) He opined that Plaintiff's impairments of Diabetes Mellitus and Affective Disorders where non severe and she did not have a combination of impairments that was severe. (R. 99.) In the Psychiatric Review Technique (PRT), Dr. Fink reviewed Listing 12.04 for Affective Disorders and Listing 12.06 for Anxiety-Related Disorders and found that Plaintiff had mild restrictions in her activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation each of extended duration. (R. 99.) Dr. Fink additionally noted that Plaintiff had only initiated mental health treatment in August 2013 and at recent contacts had improved, and her ADL functioning remained mentally intact. (R. 100.)

Dr. Garg completed a Mental Impairment Questionnaire on July 16, 2015. (R. 350-55.) Because the opinion was rendered over one year after the date last insured, this opinion is not deemed relevant to the time period at issue, particularly in light of the gap in records noted above.

### C. *Hearing Testimony*

At the August 6, 2015, ALJ hearing Plaintiff and her attorney appeared as did a Vocational Expert. (R. 76.) Plaintiff verified that she had not worked since her alleged disability onset date of

7

August 15, 2012. (R. 81-82.) She explained her symptoms related to bipolar disorder: when she was in the depression phase, which could last three to four days, she did not get out of bed and then she would go into the manic phase where she got hyper. (R. 83.) Plaintiff said her ADHD symptoms included difficulty focusing and remembering. (R. 84.) Plaintiff testified that medication helped a bit but she had side effects of dry mouth and difficulty waking. (R. 84-85.)

When questioned about her past jobs, Plaintiff said that they usually lasted about three months and then she quit because she either had depression or mania. (R. 90.) She did not know why she did not look for another job after she quit the last job she had in 2012. (R. 90-91.)

### D. *ALJ Decision*

In his November 9, 2015, ALJ Burock determined that Plaintiff had the medically determinable impairments of high blood pressure, diabetes mellitus, obesity, minimal degenerative changes of the lumbar spine, affective disorder, and anxiety disorder. (R. 62.) He further determined that, "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments." (*Id.*) ALJ Burock provided a detailed explanation

for his findings and extensively reviewed medical records, Plaintiff's testimony, function reports, and opinion evidence. (R. 63-70.)

Regarding opinion evidence, ALJ Burock accorded significant weight to the opinion of Dr. Fink that Plaintiff's mental impairments were not severe and that they resulted in mild restrictions and difficulties in the areas identified. (R. 68.) He assigned some weight to Dr. Moskel's opinion that there was no impairment in Plaintiff's ability to understand instructions, and she had no trouble getting along with coworkers, supervisors, and the public in her past jobs; he assigned limited weight to Dr. Moskel's opinion that Plaintiff had a lot of anxietiy in public as it was based totally on Plaintiff's subjective allegations. (R. 69.) ALJ Burock assigned limited weight to Dr. Garg's opinion because the assessment was rendered quite some time after the period at issue, it was not consistent with clinical findings in the record, and it was not consistent with the conservative nature of treatment. (R. 69.)

Based on his determinations that Plaintiff did not have a severe impairment or combination of impairments that significantly limited her ability to perform basic work activities, ALJ Burock concluded that Plaintiff was not under a disability from the alleged onset date of August 15, 2012, through March 31, 2014. (R. 70.)

9

Other relevant portions of the ALJ's Decision will be referenced in the Discussion section of this Memorandum.

## **II. Disability Determination Process**

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[3] It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§

---

[3] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step two of the sequential evaluation process when the ALJ found that Plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work activities and she therefore did not have a severe impairment or combination of impairments. (R. 62.)

### **III. Standard of Review**

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to

11

support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion. *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d

12

Cir. 2000) (citations omitted). If he has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by

13

substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where a claimed error would not affect the outcome of a case, remand is not required. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

In her supporting brief, Plaintiff asserts the ALJ erred on the following bases: 1) he erred in finding that Plaintiff had no severe impairments at step two; 2) he failed to properly weigh opinion evidence; 3) he erred at step three by finding Plaintiff did not meet Listings 12.04 and 12.06; and 4) he erred in his evaluation of Plaintiff's symptoms. (Doc. 12 at 1-2.)

### A. *Step Two*

Plaintiff first claims the ALJ erred by finding she had no severe impairments, asserting that "the extensive medical evidence demonstrates" that the medically determinable impairments of high blood pressure, diabetes mellitus, obesity, minimal degenerative changes of the lumbar spine, affective disorder, and anxiety disorder "individually are significant enough to affect Wolford's ability to perform basic work activities." (Doc. 12 at 7, 9.)

14

Defendant responds that the ALJ correctly determined the evidence Plaintiff submitted does not show that she had any severe impairment during the relevant time period. (Doc. 13 at 10.) The Court concludes Plaintiff has not shown the ALJ erred on the basis alleged.

The regulatory provision governing the step two determination provides the following: "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. § 404.1520(c). It is the plaintiff's burden to produce evidence showing that her impairments affect her ability to work. 20 C.F.R. § 404.1512(a).

In support of her assertion of error, Plaintiff's presents no argument regarding her physical medically determinable impairments: she merely mentions that she was treated for diabetes at Keystone Family Medicine. (Doc. 12 at 9.) Plaintiff's conclusory statement does not warrant further discussion. As noted previously, the only sufficiently articulated claim of error relates to Plaintiff's alleged mental health impairments. (*See supra* p.2 n.1 (citing Doc. 12 at 7-22).)

Regarding her medically determinable mental health impairments, Plaintiff cites diagnoses and symptoms found in medical evidence of record. (Doc. 12 at 9-12 (citing R. 302, 306-

15

11, 312, 314, 351.)  The evidence relied upon does not provide the suggested support for several reasons.

First, the mere existence of a diagnosis does not establish severity because the central consideration is the functional limitation caused by the impairment.  *See* 20 C.F.R. § 404.1522; *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).  Therefore, Plaintiff's citations to Dr. Garg's bipolar and general anxiety disorders ((Doc. 12 at 10 (citing R. 314)) and Dr. Moskel's diagnosis of depressive disorder, NOS with anxiety features, and rule out PTSD (*id.* at 11 (citing R. 302)) are unavailing.

Second, Plaintiff's reference to symptoms found in the record do not establish that the symptoms relate to the relevant time period.  The depressive and bipolar symptoms set out in Plaintiff's brief (Doc. 12 at 9-10 (citing R. 312)) reference the subjective history Plaintiff provided at her first visit with Dr. Garg on August 13, 2013.  Her discussion of depression symptoms related to some unspecified time after age eighteen; the bipolar symptoms related to an unspecified time after age twenty-five and she stated that she was not experiencing those bipolar symptoms at the time of her visit.  (R. 312-13.)  Plaintiff's reliance on symptoms identified in Dr. Garg's July 2015 questionnaire (Doc. 12 at 10 (citing R. 351)) is misplaced because the questionnaire was completed over one year after the close of the relevant time period and no records adequately bridge records preceding the date last

16

insured of March 31, 2014, and the July 16, 2015, questionnaire. As set out in the Background section above, there is a record gap from October 2013 to April 2015 which is over one year after the March 2014 date last insured. (R. 306, 337.) At the October 2013 office visit, Plaintiff reported to Dr. Garg that her depression was getting better, her mood was improving, and she had better focus (R. 306); at the April 2015 visit, Dr. Garg noted that Plaintiff was taking medications without side effects and Plaintiff said she was "pretty good" and was stressed by some household issues but was handling them "ok" (R. 337). Importantly, at both the October 2013 and April 2015 visits, Dr. Garg recorded unremarkable Mental Status examinations which included the finding that Plaintiff's mood was euthymic. (R. 306, 338.)

Finally, Plaintiff's averment that more was required of the ALJ because the State agency doctors did not review all the evidence (Doc. 12 at 11) fails. Asserting that "'an ALJ must call on a medical expert for an updated opinion on medical equivalence when additional evidence may change the earlier opinion by state agency reviewers,'" (Doc. 12 at 11 (quoting SSR 96-6p)), Plaintiff cites no evidence during the relevant time period not considered by ALJ Burock (*see id.*). Contrary to Plaintiff's inference that Dr. Fink did not review relevant evidence, Dr. Fink reviewed Dr. Garg's records through October 2013 and Dr. Moskel's October 2013 evaluation. (*See* R. 97-98.) Any suggestion that other evidence

17

existed between the November 1, 2013, State agency opinion and the March 31, 2014, date last insured which "may have changed the earlier opinion" of the State agency reviewer (Doc. 12 at 11) is simply error because the record contains no such evidence. (*See* R. 265-358.) Thus, this claimed basis for error is disingenuous at best.

For all of these reasons, Plaintiff has not satisfied her burden of showing the ALJ's conclusion that Plaintiff's impairments were not severe is not based on substantial evidence. Therefore, reversal or remand is not required on the basis alleged.

With this determination, detailed consideration of Plaintiff's remaining claimed errors is not warranted. However, the Court will briefly review the remaining errors asserted in Plaintiff's supporting brief. (Doc. 12 at 2.)

### B. *Opinion Evidence*

Plaintiff's assertion that substantial evidence does not support ALJ Burock's evaluation of opinion evidence (Doc. 12 at 11) is without merit because the claimed error relates to Dr. Garg's July 2015 opinion. (Doc. 12 at 13.) Plaintiff downplays the salient facts that the opinion was rendered more than one year after the close of the relevant time period and *no records during the relevant time period* are consistent with the limitations later assessed. This was the basis for ALJ Burock's assessment of the

18

opinion and Plaintiff presents no evidence which shows error.[4]

## C.   *Step Three*

With the finding that the ALJ did not err at step two of the sequential evaluation process, ALJ Burock's conclusion that Plaintiff was not disabled within the meaning of the Social Security Act is consistent with the demands of the sequential evaluation process. *See* 20 C.F.R. § 404.1520. Therefore, the Court will not further consider this claimed error.

## D.   *Symptom Evaluation*

Plaintiff's final claimed error is that the ALJ did not properly evaluate her symptoms. (Doc. 12 at 18.) Defendant responds that substantial evidence supports the ALJ's subjective complaint analysis. The Court concludes Plaintiff has not shown that the ALJ erred on the basis alleged.

Extensive discussion of this claimed error is not warranted in

---

[4] In her reply brief, Plaintiff expands upon the assertion made in her supporting brief that the ALJ incorrectly found that Dr. Garg's opinion was not supported by clinical findings during the relevant time period. (Doc. 12 at 14; Doc. 14 at 3-4.) The expanded argument is without merit in that the "clinical findings at the period at issue" cited in Plaintiff's reply brief are basically the same as those cited in support of the claimed step two error. (Doc. 12 at 9-11; Doc. 14 at 1-2; Doc. 14 at 4.) As previously discussed, the records cited do not establish that the symptoms relate to the relevant time period. *See supra* pp. 16-17. The additional information cited in the reply brief--that Dr. Moskel "identified" Plaintiff's "symptoms of forgetfulness and nervousness around people" (Doc. 14 at 4)--does not change the Court's conclusion that cited records do not show error in that Dr. Moskel "identified" (*id.*) these symptoms based on Plaintiff's subjective reporting rather than observed objective clinical findings (*see* R. 299, 302).

19

that Plaintiff cites Social Security Rulings and caselaw in support of her asserted error (Doc. 12 at 18-22 (citations omitted)) but the conclusory presentation of potentially applicable provisions and decisions falls far short of Plaintiff's burden of showing error on the claimed bases. In this section of her brief, Plaintiff provides five citations to summary sentences contained in the ALJ's Decision. (Doc. 12 at 18-22 (citing R. 54, 66, 68).) However, she does not provide any citation to record evidence. (*Id.*) Such generic claims of error fall far short of Plaintiff's burden of showing error on the bases claimed. Therefore, Plaintiff has provided no basis for the Court to reverse or remand this matter.

## **V. Conclusion**

For the reasons discussed above, the Court concludes that Plaintiff's appeal of the Acting Commissioner's decision is properly denied. An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: December 15, 2017